## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **TIMOTHY HOPKINS,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | Civil Action No. 1:23-cv-283 |
| | ) | |
| **v.** | ) | Judge |
| | ) | |
| **THOMAS GROSSMANN, Individually and** | ) | |
| **in his official capacity as Warren** | ) | |
| **County Commissioner,** | ) | |
| | ) | |
| **CHARLES GOEBEL,** | ) | |
| | ) | |
| **PATRICK WITTE, Individually and in his** | ) | |
| **official capacity as City of Mason police officer,** | ) | |
| | ) | |
| **CITY OF MASON POLICE** | ) | |
| **DEPARTMENT,** | ) | |
| | ) | |
| **LARRY SIMS, in his official capacity** | ) | |
| **as Sheriff of Warren County, and the person** | ) | |
| **responsible for the operation of the Warren** | ) | |
| **County Jail** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **BRETT RICHARDSON,** | ) | |
| **in his official capacity as Deputy Sheriff and** | ) | |
| **Jail Administrator of the Warren County Jail,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

---

## COMPLAINT WITH DEMAND FOR JURY TRIAL

---

## Preliminary Statement

The United States Constitution guarantees all Americans the right to due process, and the right to be free from unreasonable searches and seizures, free from unlawful arrest, and free from cruel and unusual punishment.  Timothy Hopkins had his constitutional rights violated when he was unlawfully arrested for an alleged noise violation on May 14, 2021, subsequently physically mistreated by an arresting officer who contributed to causing a severe injury to his shoulder and spine, held in jail to suffer without his prosthetic leg and necessary medications for days, and forced to defend two separate, unlawful criminal prosecutions in the months thereafter—both of which were ultimately dismissed.

Timothy Hopkins should never have been charged or arrested.  And he never would have been but for his neighbor, Charles Goebel, retaining Thomas Grossmann, Warren County Commissioner and former Mayor of Mason, Ohio, to represent him in what started as a simple property dispute between neighbors.  Grossmann abused his position to influence his client to bring unsupported legal claims against Hopkins and to inflate his own legal fees.  When that was not enough, Grossmann caused his client to file for a civil protective order against Hopkins, so that he could use his political power and position of influence to cause Hopkins further harm, damage and emotional distress.  With the assistance of the Mason Police Department and jail officials, Grossmann abused his authority as County Commissioner to cause Hopkins to be unlawfully charged, arrested, and detained.

### I.    Parties

1.    Timothy Hopkins is a United States citizen who resides in Indian Hill, Ohio.

2.    Defendant Thomas Grossmann is a County Commissioner in Warren County, Ohio who acted in his own interest and coordinated with Charles Goebel and others in pursuit of civil

and criminal claims against Timothy Hopkins, for the purpose of violating Hopkins' constitutional rights and causing him damages.

3.      Grossmann acted both in his own interest and within the scope of his employment and under color of state law, improperly exerting influence and using his authority as a Warren County Commissioner.

4.      Defendant Charles Goebel is the former neighbor of Hopkins who initiated legal action against Hopkins for an improper purpose, made material misrepresentations under oath, and conspired with, coordinated with, and aided and abetted Grossmann and others to violate Hopkins' constitutional rights and cause him damages.

5.      Defendant City of Mason Police Department is the department responsible for Hopkins' unlawful arrest.

6.      The Mason Police Department had a custom, pattern and practice of obtaining and executing arrest warrants without complying with applicable laws and court rules, and employed such a practice in this case.

7.      Defendant Patrick Witte is a police officer for the City of Mason Police Department.  Officer Witte sought and obtained a legally invalid warrant to arrest Hopkins and effectuated his arrest.

8.      At all relevant times, Officer Witte was acting in his own interest and within the scope of his employment and under color of state law.

9.      Defendant Larry Sims is the Sheriff of Warren County, Ohio and in that capacity is responsible for the operation of the Warren County Jail, where Hopkins was denied necessary medical treatment and attention during his detention.

10.     At all relevant times, Sheriff Sims was acting within the scope of his employment and under color of state law.

11.     Defendant Brett Richardson is a Deputy Sheriff of Warren County, Ohio and Jail Administrator of the Warren County Jail.  In that capacity, Administrator Richardson is responsible for the daily functioning of the jail and the well-being of detainees in his custody.

12.     At all relevant times, Administrator Richardson was acting within the scope of his employment and under color of state law.

## II.     Jurisdiction and Venue

13.     This action arises under the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, and under Ohio state law.

14.     Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331, 1343(a)(3), 1343(a)(4), and 1367.

15.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and because the Defendants reside in this district and the acts and omissions giving rise to this action occurred in this district.

## III.     Factual Allegations

16.     Timothy Hopkins is a successful businessman and licensed pharmacist.

17.     Hopkins compounds pharmaceutical ingredients for medical and scientific research regarding controlled substances to treat cancer and other debilitating health conditions.  He has over 30 years of experience in advanced compounding, organic chemistry, pharmacology, and pharmacokinetics.  As part of his clinical research into effective pain management, he cultivates medical marijuana.

18.     Hopkins is also the holder of a medical marijuana card.

19.　Hopkins is also disabled.

20.　In 2016, Hopkins had surgery on his knee.　The knee became infected, and several complications led to the need for the leg above the knee to be amputated.　Since then, Hopkins has used a prosthetic leg and wheelchair to get around.

21.　Hopkins still suffers from several serious medical ailments and neurological infirmities related to his knee complications and surgery, and experiences intractable pain on a daily basis.　He has had multiple surgeries and takes about a dozen prescription medications each day.

22.　Hopkins' injuries were exacerbated, and his condition worsened, as a direct consequence of the intervention by Goebel, Grossmann, the Mason Police Department, and jail officials into what had been a simple neighborhood property dispute.

### *Hopkins And His Neighbor, Charles Goebel, Get Into A Dispute About A Garage*

23.　In May 2020, Hopkins' neighbor of approximately 14 years, Charles Goebel, objected to Hopkins' construction of a garage on his own property.

24.　Goebel initiated the dispute by walking next door to Hopkins' home with his family, their cell phones in hand and recording video, in the presence of a police officer.　Goebel knocked on the door and spoke with Hopkins' minor son.　Goebel claimed he owned a restrictive covenant affording him the right to object to and halt Hopkins' construction of a garage and driveway on his own property.

25.　With the help of a neutral, third-party neighbor, Hopkins and Goebel were able to come to an agreement to settle this property dispute.

26.　After consulting with Thomas Grossmann, Goebel withdrew from the terms of the agreement that had been reached.　In fact, after consulting with Grossmann, Goebel's demand to

settle the issue increased by over $50,000.  Hopkins rejected that unreasonable and baseless demand.

27.    Goebel later filed for a temporary restraining order to prevent Hopkins' construction of the garage.  To assist him in this endeavor, he retained Grossmann to represent him.

28.    At all relevant times, Goebel authorized and ratified Grossmann's conduct as his attorney.

### *Thomas Grossmann Pursues Personal Vendetta Against Hopkins*

29.    Grossmann is a County Commissioner in Warren County, Ohio and is a former Mayor of the city of Mason (2007-2009).  During the relevant time period, his wife, Kathy Grossmann, was the Mayor of Mason (2019-2021).

30.    Grossmann also maintains a private law practice.

31.    Grossmann also resided in the same neighborhood as Hopkins and Goebel.

32.    Throughout the relevant time, Grossmann improperly used his official position and political influence to further both Goebel's and his own interest in the dispute over the garage construction.

33.    The litigation related to the garage dispute became extremely contentious. Grossmann's legal representation of Goebel evolved into something more akin to a personal vendetta.

34.    Grossmann used his legal representation of Goebel as a conduit to inflict not only emotional pain and pecuniary loss on Hopkins, but ultimately, physical and constitutional injury as well.

35.    For several months, Grossmann and Goebel continued their legal campaign against Hopkins.  Grossmann became increasingly frustrated with Hopkins' refusal to settle the claim under his terms.

36.    Having no success in the matter of the temporary restraining order to prevent construction of the garage, Grossmann drafted and sought a Civil Stalking Protective Order ("CSPO") against Hopkins on Goebel's behalf.

37.    Both the allegations contained within the CSPO petition and Goebel's testimony at the *ex parte* hearing before a state magistrate to obtain the order contained falsehoods and misrepresentations.

38.    Grossmann knew that once a CSPO was in place, he could use his political power and position of influence to cause Hopkins to be criminally charged for violating it.

39.    Grossmann, through his representation of Goebel, used the entry of the CSPO as leverage to force Hopkins to settle the lawsuit that he had filed regarding the dispute between Hopkins and his client.

40.    Eventually, having had enough of the ongoing garage dispute, legal fighting, harassment of his family, and Goebel's and Grossmann's ever-increasing monetary demands, Hopkins decided to resolve the matter and agreed to pay a certain settlement amount (representing Grossmann's alleged legal fees), cease construction of the garage, and assent to entry of the CSPO.

41.    For Hopkins, the value in this settlement was simply to have Grossmann and Goebel leave him and his family alone for good.

### *Grossmann And Goebel Continue To Harass Hopkins After the Consent Order Is Entered And Involve The Mason Police Department*

42.    Despite the settlement, Goebel and Grossmann did not stop their harassment of Hopkins or his family.

7

43.     Beginning in 2020, on advice from and at the direction of Grossmann, Goebel began making repeated noise complaints to the Mason Police Department, attributing the noise to Hopkins driving his personal vehicle in and out of their neighborhood—and in and out of his own driveway, adjacent to Goebel's property.

44.     Both Grossmann and Goebel had personal contact with the Mason Police Department, provided the Department with false and/or exaggerated reports, and influenced the Department's decision to initiate and continue its investigation of Goebel's noise complaints.

45.     On May 10, 2021, Officer Patrick Witte of the Mason Police Department responded to one of Goebel's complaints.

46.     Prior to his arrival, Officer Witte was, or should have been, aware of the contentious property dispute between Hopkins and Goebel.

47.     Several Mason Police Department officers, including the officer accompanying Officer Witte on May 10, had been called to the neighborhood by Goebel several times before for his exaggerated or unfounded claims.

48.     When Officer Witte arrived on this date, he saw a vehicle matching the description of the vehicle referenced in Goebel's complaint pull into Hopkins' driveway.

49.     Officer Witte did not attempt to contact the driver, even though he and a fellow officer on scene had both observed the vehicle in operation, driven near the vehicle themselves, and witnessed the vehicle pull into Hopkins' driveway.

50.     Instead, Officer Witte proceeded to the Goebel residence, where he went inside to watch a surveillance video that was apparently recorded some time before the officers' arrival.

***Officer Patrick Witte Unlawfully Charges Hopkins With A Violation Of The CSPO***

51.     After speaking with Goebel and watching the video, Officer Witte advised Goebel that he would charge Hopkins with violating the CSPO, even though the facts regarding the latest noise complaint did not rise to a violation of the CSPO.

52.     Officer Witte made the decision to charge Hopkins without any reasonable justification or probable cause.  He only watched a video—created by Goebel—showing a vehicle on the road, and listened to the audio recording associated with it.

53.     Officer Witte did no further investigation.

54.     Officer Witte was unable to see who was actually driving the vehicle in the video, and he and his partner did not see the driver of the vehicle when they observed the car driving through the neighborhood prior to stopping at Goebel's residence.

55.     Any sound in Goebel's video allegedly attributable to the vehicle did not rise above the level of sound necessarily made by such a vehicle when driven in a normal, law-abiding manner.

56.     Officer Witte did not attempt to interview Hopkins or other members of his family.

57.     Even though the customary way of handling an alleged non-violent violation of a CSPO is to request that the court issue a summons for the respondent to appear and have the matter handled through the usual court process, Officer Witte drafted a criminal complaint seeking to have a warrant issued for Hopkins' arrest.

58.     The application for the complaint was not sworn to or signed before a judge or deputy clerk.  Nor was the complaint based on a required showing of probable cause.

59.     Officer Witte knew or should have known that there was an insufficient legal and factual basis or reason to obtain a warrant for Hopkins' arrest.

60.     Officer Witte also knew that seeking a warrant for an arrest on an alleged misdemeanor noise violation in lieu of a summons was highly unusual and constituted an overstep and abuse of his authority.

***Officer Witte Purposefully Delays Execution Of The Arrest Warrant***

61.     Nevertheless, an arrest warrant was issued early in the morning on Tuesday, May 11, 2021.

62.     A reasonable police officer would have known the warrant was invalid, as it was not sworn or signed before a judge or based on probable cause.

63.     A reasonable police officer would have known, based on the allegations made by Goebel, that Hopkins should, at most, have been sent a summons to answer the alleged violation through the usual court process.

64.     At minimum, a reasonable officer would have attempted to serve a lawful arrest warrant—for an alleged violation of a CSPO—as close in time to the issuance of the warrant as possible.

65.     Officer Witte did not act reasonably. He waited until late in the afternoon on Friday, May 14, 2021, at a time when he knew the courts would be closed, to effectuate Hopkins' arrest based on the invalid warrant.

66.     The delay in making the arrest was purposefully intended to cause Hopkins to spend the weekend in jail without having the opportunity to appear before a judge in the interim. Given that the alleged violation was a misdemeanor, and that Hopkins had no criminal history whatsoever, he undoubtedly would have been quickly released on personal recognizance if a judge was available.

67.     Officer Witte was not the only person who contributed to the decision to purposefully delay Hopkins' arrest until just prior to the weekend.

68.     On information and belief, from the time Goebel made the noise complaint on May 10, 2021 through the time Hopkins was taken into custody on May 14, 2021, Grossmann continued to communicate with and exert his influence on representatives of the Mason Police Department and local prosecutor's office.

69.     On information and belief, Grossmann was aware of and contributed to the plan of when to effectuate the arrest of Hopkins.

### *Hopkins Is Arrested On A Friday Afternoon For A Noise Complaint And Suffers An Injury While In Police Custody*

70.     On Friday, May 14, 2021 at or around 4:00 pm, Hopkins was pulled over while lawfully driving his personal vehicle in his own neighborhood, with his minor son in the passenger seat, and he was stopped and arrested.

71.     Hopkins was told that he was being placed under arrest for violating the CSPO.

72.     The alleged CSPO violation was based solely on Goebel's noise complaint on May 10, 2021 and Officer Witte's review of the video—which neither established the identity of the driver nor confirmed a purposefully unlawful noise level.

73.     Hopkins was handcuffed behind his back and placed in the back of a cruiser, then transported to the jail for booking.

74.     Officer Witte had to assist Hopkins to place his prosthetic leg into the cruiser.

75.     Upon arrival at the jail, Hopkins was instructed to get out of the police cruiser.

76.     With his hands cuffed behind him, and because of his prosthetic leg, it was very difficult for Hopkins to exit the vehicle.

11

77.     Officer Witte stepped in to physically remove Hopkins from the cruiser and grabbed Hopkins by the arm, as his prosthetic leg got jammed next to the seat.

78.     These actions caused Hopkins to fall to the ground, causing severe damage to his shoulder and spine.

79.     Officer Witte called for a nurse, but little and inadequate medical attention was rendered to Hopkins.  Rather, he was placed in a wheelchair and taken to the booking area.

***Hopkins Was Denied Accommodation And Deprived Of Necessary Medical Treatment And Medications***

80.     On information and belief, the Warren County jail had a policy and custom, implemented by Sheriff Sims and Administrator Richardson, of being deliberately indifferent to the medical needs of disabled inmates, including by denying them access to vital medical equipment and failing to make the facility fully accessible to people with disabilities.  Hopkins was harmed as a direct result of these unconstitutional policies and customs.

81.     On information and belief, the Warren County jail also had a policy and custom, implemented by Sheriff Sims and Administrator Richardson, of denying inmates access to lawfully prescribed medications, even where the inmate depended on the medications for legitimate medical needs.  Hopkins was injured as a direct result of that unconstitutional policy and custom.

82.     The arresting officers, including Officer Witte, knew of Hopkins' serious physical disabilities and need for medication prior to his arrest.

83.     The arresting officers and jail officials also knew that Hopkins was injured because of his violent fall from the police cruiser.

84.     At booking, Hopkins' prosthetic leg was removed, and afterwards it was kept from him for several hours a day, requiring him to stand on one leg for hours at time.

12

85.     During this time, and without his prescribed and required medications, Hopkins fell to the ground more than once, which further aggravated his injuries.

86.     Hopkins was also not able to charge his spinal stimulator.

87.     Hopkins was permitted to shower at one point during his detention, but in a location that lacked safety bars and was not properly equipped for disabled persons.

88.     Hopkins was not able to sleep due to constant pain from his fall out of the cruiser, pain from other falls occurring at the jail, pain from not having his spinal stimulator, and symptoms from going without his necessary medications.

89.     The absence of medications also caused Hopkins to experience symptoms of withdrawal and other adverse impacts to his physical and mental health.

90.     Over the course of the weekend, Hopkins' physical and mental condition worsened.

91.     Despite repeated requests from Hopkins and his wife, Jamie Dengler, he was denied the benefit of his medications or proper medical attention.

***The Unlawful Arrest, Detention, And Prosecution Of Hopkins For The Noise Complaint Are All Actionable***

92.     Hopkins' arrest, detention, and subsequent criminal prosecution were all in violation of his constitutional rights.

93.     Hopkins suffered severe damage because of Defendants' conduct, his mental and physical condition has continued to deteriorate, and he continues to suffer from the acts of Defendants to date.

***Hopkins' Unlawful Detention Was Used To Initiate A Subsequent Unlawful Prosecution***

94.     On information and belief, officials at the Warren County jail were instructed to carefully monitor Hopkins' phone calls for any unusual or noteworthy content.

95.     During one of the calls with his wife, Hopkins spoke about the maintenance of marijuana plants associated with his pain management research as a pharmacist, his legitimate compounding activities, and his lawful possession of a medical marijuana card.

96.     On information and belief, officials at the jail contacted the local prosecutor's office regarding the calls.

97.     On information and belief, the local prosecutor's office contacted members of the Warren County Drug Task Force and arranged to have copies of the recorded telephone calls from the jail transmitted to them.

***Hopkins Is Charged As A Result Of An Unlawful Search Of His Home***

98.     Members of the Warren County Drug Task Force obtained and executed a search warrant at the Hopkins residence on May 18, 2021, one day after Hopkins was released from his unlawful detention on the noise complaint.

99.     As a result of the search, Hopkins and his wife, Ms. Dengler, were subsequently charged with several alleged felony drug violations.

100.     On information and belief, the fact that Hopkins was a licensed pharmacist acting in compliance with applicable Board of Pharmacy regulations, and a medical marijuana card holder, was withheld from the grand jury that was asked to consider criminal charges against Hopkins and his wife.

101.     The grand jury presentation was based on information and evidence that was unlawfully obtained by law enforcement.

102.     Shortly after the arrest warrants were issued pursuant to the recently returned felony indictments, members of the Warren County Drug Task Force set out to locate and arrest Hopkins and his wife.

14

103.     This was unnecessary, as Hopkins and his wife were fully prepared to voluntarily appear and surrender to address the marijuana charges.

104.     Officers from the Task Force took several unlawful and unreasonable actions in their quest to locate and arrest Hopkins and his wife, including chasing Hopkins' minor son at a high rate of speed on the highway in an unmarked car, terrifying the young man who was unaware that the vehicle chasing him belonged to the police, and eventually stopping him.

105.     The marijuana-based indictment that was returned against Hopkins and his wife following the illegal search of Hopkins' home was later determined to be legally defective and invalid.

**Count 1: Violation of 42 U.S.C. § 1983**
**Unlawful Arrest and Detention in Violation of the Fourth, Fifth, Eighth and Fourteenth**
**Amendments of the United States Constitution**
**(Against Officer Witte and the Mason Police Department)**

106.     Hopkins adopts and incorporates by reference all preceding paragraphs as if fully restated herein.

107.     At all relevant times, the conduct of Officer Witte and the Mason Police Department was within the purview of 42 U.S.C. § 1983.

108.     In violation of Hopkins' clearly established Fourth, Fifth, Eighth, and Fourteenth Amendment rights, Officer Witte illegally seized the person of Hopkins when he caused the arrest warrant to be issued against him, which was a show of authority that caused Hopkins to be arrested and submit to incarceration, thereby restraining his liberty.

109.     The arrest warrant for Hopkins was invalid as it was based on material misrepresentations and omissions, including a failure by the officer to swear under oath or affirmation, and the lack of any supportable showing of probable cause.

110.    Officer Witte's illegal seizure of Hopkins, who he knew to be disabled, resulted in Hopkins suffering substantial physical injury, substantial emotional distress, mental anguish, embarrassment, and damage to reputation.

111.    Officer Witte lacked appropriate justification for his seizure of Hopkins, and he lacked probable cause to seek the arrest of Hopkins, as he was aware or should have been aware that the noise complaint by Goebel did not constitute a violation of the CSPO and was not otherwise a crime.

112.    Given the facts of this case, a reasonably prudent police officer would not believe that Hopkins had committed or was committing the charged offense of violating the CSPO.

113.    The purposeful timing of the arrest late in the day on a Friday was also designed and intended to ensure that Hopkins would be required to be detained over a weekend, rather than appear before the court and be released on personal recognizance.

114.    Officer Witte also violated Hopkins' constitutional rights by causing Hopkins to fall violently to the ground when exiting the police cruiser, injuring his leg, shoulder, and spine.

115.    Officer Witte's and the Mason Police Department's actions were unlawful, unreasonable, and were a direct and proximate cause of Hopkins' injuries and claimed damages herein.

116.    Officer Witte's and the Mason Police Department's actions were performed under the color of state law, and violated Hopkins' clearly established Fourth, Fifth, Eighth and Fourteenth Amendment rights.

117.    Officer Witte knew he was violating Hopkins' clearly established Fourth, Fifth, Eighth and Fourteenth Amendment rights as he was doing so.

118.    Officer Witte's and the Mason Police Department's conduct was willful and exhibited flagrant disregard to Hopkins' federally secured rights under the United States Constitution.  Accordingly, Officer Witte and the Mason Police Department are liable to Hopkins under 42 U.S.C. § 1983.

119.    At all relevant times, Officer Witte acted with improper motive and intent, or at minimum, with a reckless or callous indifference to the federally protected rights of Hopkins.

### Count 2: Violation of 42 U.S.C. § 1983
**Malicious Prosecution for Violating the CSPO in Violation of the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution**
**(Against Officer Witte)**

120.    Hopkins adopts and incorporates by reference all preceding paragraphs as if fully restated herein.

121.    At all relevant times, the conduct of Officer Witte was within the purview of 42 U.S.C. § 1983.

122.    Grossmann drafted a CSPO petition on behalf of Goebel, which contained known falsehoods and material misrepresentations, for the purpose of prosecuting Hopkins after its entry.

123.    In violation of Hopkins' clearly established Fourth, Fifth and Fourteenth Amendment rights, Officer Witte caused an illegal seizure of Hopkins' person and property when he wrongfully charged Hopkins with a violation of the CSPO and sought an arrest warrant.

124.    Officer Witte influenced and participated in the decision to prosecute Hopkins by arresting Hopkins without probable cause and on a legally invalid arrest warrant.

125.    The criminal proceedings against Hopkins for the alleged CSPO violation caused a deprivation of his liberty apart from the initial seizure in the arrest.

126.    The criminal proceedings against Hopkins for the alleged CSPO violation resolved in his favor when the misdemeanor charge was dismissed by a judge in the Municipal Court of Mason, Ohio.

127.    Officer Witte's malicious prosecution of Hopkins resulted in him suffering a deprivation of liberty, attorneys' fees, physical injury, substantial emotional distress, mental anguish, embarrassment, and damage to his reputation.

128.    Officer Witte's malicious prosecution was a direct and proximate cause of Hopkins' injuries and claimed damages herein.

129.    Officer Witte's actions described herein were performed under the color of state law, and violated Hopkins' clearly established Fourth, Fifth and Fourteenth Amendment rights.

130.    Officer Witte knew he was violating Hopkins' clearly established Fourth, Fifth and Fourteenth Amendment rights as he was doing so.

131.    Officer Witte's conduct was willful and exhibited flagrant disregard for Hopkins' federally secured rights under the United States Constitution.  Accordingly, Officer Witte is liable to Hopkins under 42 U.S.C. § 1983.

132.    At all relevant times, Officer Witte acted with improper motive and intent, or at minimum, with a reckless or callous indifference to the federally protected rights of Hopkins.

**Count 3: Violation of 42 U.S.C. § 1983**
**Deliberate Indifference to Serious Medical Needs in Violation of the**
**Eighth and Fourteenth Amendments of the United States Constitution**
**(Against Sheriff Sims and Administrator Richardson)**

133.    Hopkins adopts and incorporates by reference all preceding paragraphs as if fully restated herein.

134.    Sheriff Sims and Administrator Richardson violated Hopkins' constitutional rights once Hopkins arrived at the jail by instituting policies and practices under which Hopkins was

18

deprived of his prescribed and essential medications and had his prosthetic leg removed for several hours each day, resulting in additional falls and injuries to Hopkins' shoulder and spine.

135.    Under the Eighth Amendment's prohibition against "cruel and unusual punishment," officials acting under color of law may not unnecessarily and wantonly inflict pain on a detainee by acting with deliberate indifference toward the detainee's serious medical needs. Pursuant to the Fourteenth Amendment, this prohibition also applies to pretrial detainees.

136.    Hopkins suffers from a condition that has been diagnosed by licensed physicians as mandating treatment, and one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention and the excessive risk to Hopkins' health.

137.    Sheriff Sims and Administrator Richardson knew of and disregarded the risks to inmates' health that would result from the unconstitutional policies and customs implemented at the Warren County jail.  As a result of those policies, Hopkins was mistreated while he was unlawfully detained, causing him extreme physical, mental, and emotional damage.

138.    Sheriff Sims' and Administrator Richardson's actions constituted cruel and unusual punishment in violation of Hopkins' Eighth Amendment rights.

**Count 4: Conspiracy to Violate Hopkins' Rights**
**Guaranteed by the Fourth, Fifth, Eighth and Fourteenth Amendments**
**of the United States Constitution**
**(Against All Defendants)**

139.    Hopkins adopts and incorporates by reference all preceding paragraphs as if fully restated herein.

140.    At all relevant times, the conduct of Defendants was within the purview of 42 U.S.C. § 1983.

141.    In violation of Hopkins' clearly established Fourth, Fifth, Eighth and Fourteenth Amendment rights, Defendants conspired together to unlawfully arrest and prosecute Hopkins.  In doing so, Defendants intentionally deprived Hopkins of his constitutional rights.

142.    Defendants engaged in several overt acts to deprive Hopkins of his constitutional rights, including, among other things, knowingly relying on an invalid arrest warrant, arresting Hopkins for a noise complaint, and delaying Hopkins' arrest to ensure he spent the weekend in jail while in severe physical pain.

143.    Upon information and belief, Grossmann and Goebel engaged in independent overt acts to cause Officer Witte to mislead the magistrate judge and to manufacture probable cause for Hopkins' arrest on violation of the CSPO for a noise complaint.

144.    Upon information and belief, Grossmann engaged in independent overt acts to encourage Officer Witte to seek an arrest warrant for Hopkins rather than to issue a summons, to obtain an arrest warrant lacking in probable cause and not in compliance with applicable laws and court rules, and by urging that Hopkins be arrested at a time that would, and did, result in his unlawful detention over a weekend.

145.    Defendants' actions were all committed in furtherance of the conspiracy to violate Hopkins' constitutional rights.

146.    Defendants' conspiracy was a direct and proximate cause of Hopkins' injuries and claimed damages herein.

147.    Defendants' actions described herein were performed under the color of state law, and violated Hopkins' clearly established Fourth, Fifth, Eighth and Fourteenth Amendment rights.

148.    Defendants knew they were violating Hopkins' clearly established Fourth, Fifth, Eighth and Fourteenth Amendment rights as they were doing so.

149.    Defendants' conduct was willful and exhibited a flagrant disregard for Hopkins' federally secured rights under the United States Constitution.  Accordingly, Defendants are liable to Hopkins under 42 U.S.C. § 1983.

150.    At all relevant times, Defendants acted with improper motive and intent, or at minimum, with a reckless or callous indifference to the federally protected rights of Hopkins, such that punitive damages are warranted.

### Count 5: Conspiracy to Violate the Due Process Clause of the Fifth and Fourteenth Amendments
### Unlawful Arrest and Detention
### (Against Grossmann, Goebel, and Officer Witte)

151.    Hopkins adopts and incorporates by reference all preceding paragraphs as if fully restated herein.

152.    Grossmann, Goebel, and Officer Witte conspired together to violate Hopkins' due process rights under the Fifth and Fourteenth Amendments.

153.    The actions of Grossmann, Goebel, and Officer Witte lacked any rational basis and were motivated by animus and ill-will toward Hopkins.

154.    Goebel and Grossmann purposefully misled the magistrate to obtain entry of an unlawful CSPO.

155.    There was no rational basis for seeking an arrest warrant for Hopkins based on Goebel's noise complaint, for relying upon an invalid warrant to arrest Hopkins, or to have arrested Hopkins late in the afternoon on Friday, May 14, 2021.

156.    Defendants Grossmann and Goebel directed, participated with, encouraged, approved, and knowingly acquiesced in the unconstitutional conduct of the offending law enforcement officers.

157. The actions by these Defendants violated Hopkins' right to due process of law as guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution.

## Count 6: Malicious Prosecution
### (Against Grossmann, Goebel, and Officer Witte)

158. Hopkins adopts and incorporates by reference all preceding paragraphs as if fully restated herein.

159. Grossmann drafted a CSPO petition on behalf of Goebel, which contained known falsehoods and material misrepresentations, for the purpose of prosecuting Hopkins after its entry. Goebel authorized and ratified the allegations in the CSPO that were authored by Grossmann.

160. Following the entry of the CSPO, Goebel repeatedly made false or exaggerated claims to the Mason Police Department that Hopkins was violating the CSPO.

161. On May 10, 2021, Goebel initiated the criminal proceedings against Hopkins by falsely reporting that Hopkins violated the CSPO.

162. Goebel lacked probable cause to report that Hopkins violated the CSPO.

163. Officer Witte lacked probable cause to initiate criminal proceedings against Hopkins for allegedly violating the CSPO.

164. Grossmann, Goebel, and Officer Witte acted with malice in instituting the prosecution of Hopkins.

165. The criminal proceeding against Hopkins for allegedly violating the CSPO was terminated in Hopkins' favor.

166. Hopkins suffered mental, physical, and emotional damage as a result of Grossmann's, Goebel's, and Officer Witte's actions.

**Count 7: Intentional Infliction of Emotional Distress**
**(Against Grossmann, Goebel, and Officer Witte)**

167.　　Hopkins adopts and incorporates by reference all preceding paragraphs as if fully restated herein.

168.　　Defendants' conduct was intentional, extreme, intolerable, egregious, and contrary to generally accepted standards of decency and morality.

169.　　Defendants engaged in conduct that was the direct and proximate cause of Hopkins' extreme mental distress, pain and suffering, resulting in a physical manifestation of distress which has led to physical, mental and emotional suffering.

170.　　The mental distress, pain and suffering Defendants inflicted upon Hopkins was severe in nature and continues to significantly affect his everyday life and require continued treatment.

**Count 8: Negligent Infliction of Emotional Distress**
**(Against Grossmann, Goebel, and Officer Witte)**

171.　　Hopkins adopts and incorporates by reference all preceding paragraphs as if fully restated herein.

172.　　Defendants engaged in conduct that was the direct and proximate cause of Hopkins' extreme mental distress, pain and suffering, resulting in a physical manifestation of distress which has led to physical, mental and emotional suffering.

173.　　As a result of Defendants' conduct, Hopkins was in fear of physical consequence to his own person.

174.　　It was reasonably foreseeable by Defendants that their conduct would result in Hopkins' severe emotional distress.

175.    The mental distress, pain and suffering Defendants inflicted upon Hopkins was severe in nature and continues to significantly affect his everyday life and require continued treatment.

### Count 9: Civil Conspiracy
### (Against Grossmann, Goebel, and Officer Witte)

176.    Hopkins adopts and incorporates by reference all preceding paragraphs as if fully restated herein.

177.    Defendants conspired, collaborated, and acted in concert to deprive Hopkins of his civil and constitutional rights, and to cause injury to Hopkins' person or property, resulting in physical, mental, emotional and pecuniary damage.

178.    Defendants conspired, collaborated, and acted in concert to unlawfully arrest Hopkins, unlawfully detain Hopkins, unlawfully search Hopkins' home and person, unlawfully prosecute Hopkins (twice), and cause him physical, mental, emotional and pecuniary damage.

### Jury Demand

Hopkins hereby demands a trial by jury of all issues triable to a jury.

### Prayer for Relief

**WHEREFORE**, Hopkins demands the following:

1.    Judgment against Defendants in an amount to be determined by a jury, given the facts and after hearing the issues of the case;

2.    An award of compensatory damages;

3.    An award of punitive damages;

4.    Attorneys' fees and costs;

5.    Pre and post-judgment interest;

6.    All such further relief which this Court deems proper.

24

Respectfully submitted,

TIMOTHY HOPKINS

By his attorneys,

*/s/ Brian O'Connor*
Brian P. O'Connor
H. Louis Sirkin
SANTEN & HUGHES
600 Vine Street, Suite 2700
Cincinnati, OH 45202
(513) 721-4450
(513) 721-0109 (fax)
bpo@santenhughes.com
hls@santenhughes.com

*/s/ Brian T. Kelly*
Brian T. Kelly (*pro hac vice* forthcoming)
Lauren A. Maynard (application for admission forthcoming)
NIXON PEABODY LLP
53 State Street
Boston, MA 02109
Tel: (617) 345-1000
Fax: (844) 653-5017
bkelly@nixonpeabody.com
lmaynard@nixonpeabody.com